***********
Upon review of all of the competent evidence of record with reference to the errors assigned and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, the Full Commission AFFIRMS the Opinion and Award of Deputy Commissioner Hall.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before Deputy Commissioner Hall as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. The employment relationship existed between plaintiff and defendants at all relevant times.
3. The average weekly wage is to be determined by wage transcript.
4. Plaintiff's date of diagnosis was August 18, 2000.
5. Plaintiff's claim is for carpal tunnel syndrome.
6. The following stipulations were entered into by the parties at the hearing before Deputy Commissioner Hall:
 Stipulated Exhibit 1 plaintiff's medical records from Dr. Gilbert G. Whitmer; Dr. Donald W. Bales; Dr. J. Greg Nelson.
Stipulated Exhibit 2 — transcript of recorded statement
Stipulated Exhibit 3 — stack up diagram
Stipulated Exhibit 4 — cam plate diagram
Stipulated Exhibit 5 — parlor majestic machine photography
Stipulated Exhibit 6 — photograph of worker
Stipulated Exhibit 7 — plaintiff's personnel records
Stipulated Exhibit 8 — plaintiff's job description
Stipulated Exhibit 9 — Form 22 and attachments
Stipulated Exhibit 10 — defendants' job description
Stipulated Exhibit 11 — North Carolina Industrial Commission forms
 Plaintiff's Exhibit 1 letter from Leonard T. Jernigan, Jr. dated September 26, 2001
 Defendants' Exhibit 1 job description by John Anderson for Dr. Whitmer.
7. The issues before the Full Commission are whether plaintiff sustained a compensable occupational disease as defined in Chapter 97; did plaintiff have a pre-existing medical condition that was aggravated by her employment; what additional benefits, if any, is plaintiff entitled to under the Workers' Compensation Act; and is plaintiff entitled to attorney's fees under N.C. Gen. Stat. § 97-88.1 for the unjustified refusal to pay her claim after diagnosis by her physicians?
 ***********
Based upon all the competent evidence of record, the Full Commission finds as fact and concludes as a matter of law the following:
 FINDINGS OF FACT
1. Plaintiff was 50 years old at the time of the hearing before Deputy Commissioner Hall.
2. From January 9, 1989 until April 4, 2001, plaintiff was continuously employed by defendants.
3. During the course of her employment with defendants, plaintiff worked eight to twelve hours per day, five to seven days per week. Plaintiff's hours changed daily, depending on the volume of work to be done.
4. During her employment with defendants, plaintiff worked as a machine technician, operating a variety of different machines. At the time of her injury, plaintiff was working in the stack-up room on the assembly side of the room.
5. Plaintiff continuously operated multiple machines and manufactured a number of different parts used in airplane engines and other large machinery.
6. During 2000, plaintiff spent approximately 75% of her working hours operating one machine. In order to operate this machine, plaintiff pushed a button to make the pistons move then she cranked a wheel that made the entire table move. She repeatedly loaded piston assemblies and cranked the wheel with both hands during the course of her work. Plaintiff testified that the wheel was not hard to turn, but it required maintaining steady pressure with the hands.
7. Prior to June 2000, plaintiff was in good overall health and had an active life.
8. Beginning in June 2000, plaintiff began to wake in the middle of the night with pain and numbness in her left hand. Soon afterwards, she had pain in both hands. The numbness in both hands increased until plaintiff was unable to steadily hold a pencil or other small items. On June 27, 2000, plaintiff was seen by her primary care physician, Dr. Donald Bales, who noted that plaintiff "works with a repetitive motion in her job and she showed me some kind of motion that she was doing that I think would exacerbate wrist irritation." Dr. Bales informed plaintiff at that time that she probably had mild carpal tunnel syndrome.
9. Dr. Bales diagnosed plaintiff with carpal tunnel syndrome in her left hand on August 18, 2000. Dr. Bales referred plaintiff for TSH, EMG's and a nerve conduction study on her left hand.
10. On October 13, 2000, in response to the results of the nerve conduction studies by Dr. J. Gregory Nelson, Dr. Bales reported that plaintiff "does have carpal tunnel syndrome of the left hand, which was proven by doing a nerve conduction study. She does repetitive work with defendants and I feel sure that the carpal tunnel is related to that."
11. On January 25, 2001, Dr. Gilbert G. Whitmer at Carolina Regional Orthopaedics in Rocky Mount, North Carolina diagnosed plaintiff as suffering from bilateral carpal tunnel syndrome, left worse than right. Dr. Whitmer injected plaintiff with a carpal tunnel injection of cortisone.
12. On March 12, 2001 defendants filed a Form 61, Denial of Workers' Compensation Claim.
13. Plaintiff indicated that the cortisone injection did not relieve her symptoms and Dr. Whitmer scheduled her for carpal tunnel release surgery on her left hand. Plaintiff was still having pain in both wrists, but her left was more painful than her right. Plaintiff worked until the day of her surgery, April 6, 2001.
14. On May 14, 2001, Dr. Whitmer released plaintiff to return to work with restrictions of no strenuous or repetitive use of left hand.
15. Plaintiff's left hand steadily improved after surgery; however, she reported that her right hand continued to be numb and tingly.
16. On July 11, 2001, Dr. Whitmer indicated plaintiff's left hand was doing better, but plaintiff was reporting increased pain in the right hand and wrist. Plaintiff had surgery on her right hand on July 23, 2001.
17. On September 20, 2001, Dr. Whitmer released plaintiff to return to work with restrictions of light work only, no repetitive work, no lifting over 15 pounds, no pushing and no pulling over 15 pounds with either hand.
18. Dr. Whitmer testified at a post-hearing deposition that plaintiff's employment placed her at an increased risk for the development of carpal tunnel syndrome, over members of the general public. He stated that the repetitive nature of plaintiff's employment was a significant causative factor in the development of carpal tunnel syndrome in plaintiff's hands.
19. On March 26, 2002, Dr. Whitmer indicated that plaintiff reached maximum medical improvement and placed permanent restrictions on her, which were identical to the restrictions plaintiff was given on September 20, 2001.
20. On March 6, 2001, Ms. Faye Figlewski, defendants' plant nurse, filed an Industrial Commission Form 19, Report of Injury on behalf of defendants. Ms. Figlewski testified that Cigna, defendants' general health insurer, denied coverage for plaintiff's first surgery because Cigna determined her injury was work related.
21. Thereafter, because defendant-carrier, Zurich-American Insurance Group, denied the claim, Cigna paid for plaintiff's medical treatment.
22. Ms. Faye Figlewski contacted plaintiff and instructed her to return to work on Monday, May 15, 2001.
23. Plaintiff returned to work as instructed, but was given new tasks. She was required to walk around from workstation to workstation within the plant with a clipboard and pencil to ask employees whether they had any recommendations for changes to their work process. Plaintiff was to write each employee's process change request on a card and then input the information into a computer database.
24. After performing these tasks for one day, plaintiff experienced pain in her hands from the work and she went back out of work.
25. On September 20, 2001 upon learning of Dr. Whitmer's release to work, Ms. Figlewski again contacted plaintiff and instructed her to return to work the next day. Ms. Figlewski informed plaintiff that the plant had the same job available for her as was available in May 2001. On the advice of her attorney, plaintiff did not return to the plant.
26. John Anderson, a team leader on the manufacturing floor and an employee at the plant for 17 years at the time of the hearing before Deputy Commissioner Hall, testified that no one ever held the particular job that was offered to plaintiff and that individual employees were expected to report changes in their work process. Mr. Anderson testified that the job assigned to plaintiff was a task that was incorporated into every employee's job requirements. He also testified that no employee had ever held that position and no employee was currently performing that job at the plant.
27. Ms. Figlewski similarly admitted that the job provided to plaintiff had never existed at the plant before and that no one was currently performing that job.
28. Defendants hired Al Gorrod to perform an ergonomic analysis of plaintiff's job. Mr. Gorrod found that plaintiff's job involved no adverse or problematic repetition and expressed his opinion that plaintiff's job did not cause or significantly contribute to the development of plaintiff's bilateral carpal tunnel syndrome.
29. The video prepared by Al Gorrod and submitted by defendants does not accurately reflect the nature of the job performed by plaintiff in that she testified she was required to turn a wheel with both hands in order to operate the piece of machinery. Plaintiff also testified to using a "nut crack" or large set of pliers when working with the piston assembly, which is not shown. The video, which was taken in a different plant than the one where plaintiff worked, includes a similar piece of machinery; however, it is a newer model. Notwithstanding the modifications in the video, Dr. Whitmer reviewed the video and still concluded that the type of hand movements performed by plaintiff were consistent with repetitive motion.
30. Dr. Whitmer testified that plaintiff was required to turn a crank with the hand and wrist; measure and test extremely small parts that required a lot of very fine, tight manipulation of the hands and fingers; place a part in a lathe and either trim or wind something around the base of the part, which required a very tight pinch and small, tight grasp; and although a few tasks were more automated, the majority of them required a lot of sustained operator use of the hands, either forcefully or using very tight, fine grip. He stated that plaintiff's work, as illustrated by the video, "was a significant causative factor in the development of carpal tunnel syndrome in her hands."
31. The Commission gives greater weight to the expert medical opinions of Drs. Whitmer and Bales than to Mr. Gorrod and finds that the greater weight of the medical evidence indicates that plaintiff's carpal tunnel syndrome in both hands was caused by her work with defendants, that her employment exposed her to a higher risk of carpal tunnel syndrome as compared to members of the general public not so employed and that her employment was a significant contributing factor in the development of carpal tunnel syndrome.
32. According to the testimony of Dr. Whitmer, plaintiff may need future medical care related to her compensable injuries.
33. Based on the Form 22 wage chart filed by defendants, plaintiff's average weekly wage is $1,023.61, yielding a compensation rate of $682.44. Plaintiff's disability began in 2001 and the maximum compensation rate for 2001 is $620.00.
34. This matter was appealed to the Full Commission by defendants from an Opinion and Award awarding benefits and results in the affirmation of that award.
35. Given the questions raised about whether plaintiff's job was in fact repetitive and could have caused plaintiff's condition, the defense of this claim was not unreasonable.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff's contraction of carpal tunnel syndrome is the result of conditions characteristic of and peculiar to her employment with defendants, is not an ordinary disease of life to which the general public not so employed is equally exposed, and is therefore a compensable occupational disease under N.C. Gen. Stat. § 97-53(13).
2. Defendants offered plaintiff a make-work job that was not suitable employment and therefore plaintiff justifiably refused to return to it on September 27, 2001. N.C. Gen. Stat. § 97-32; Peoples v. Cone MillsCorp., 316 N.C. 426, 342 S.E.2d 798 (1986).
3. As a result of her contraction of a compensable occupational disease, plaintiff is disabled and entitled to total disability compensation. Plaintiff is entitled to compensation benefits at the maximum compensation rate for 2001 of $620.00 per week from April 6, 2001 until such time as she returns to suitable employment or until further Order of the Commission, subject to attorney's fees hereinafter provided. N.C. Gen. Stat. § 97-29.
4. Plaintiff is entitled to have defendants pay for all medical expenses incurred or to be incurred as a result of her compensable injury as may be required to provide relief, effect a cure, or lessen the period of disability. N.C. Gen. Stat. § 97-25.
5. Plaintiff is entitled to an attorney's fee assessed against defendants in the amount of $1,000.00 pursuant to N.C. Gen. Stat. § 97-88.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff total disability compensation in the amount of $620.00 per week from April 6, 200 and continuing each week until such time as plaintiff returns to suitable employment or further Order of the Industrial Commission. This award is subject to an attorney's fee set out below and those amounts that have accrued shall be paid in a lump sum.
2. Defendants shall pay for all medical expenses incurred or to be incurred as a result of plaintiff's compensable injury as may be required to provide relief, effect a cure, or lessen the period of disability.
3. A reasonable attorney's fee of 25% of the compensation awarded to plaintiff in paragraph 1 above is hereby approved to be deducted from the lump sum due plaintiff and shall be paid directly to plaintiff's counsel. Thereafter, every fourth check shall be paid directly to plaintiff's counsel.
4. Defendants shall pay the costs, including a reasonable attorney's fee in the amount of $1,000.00 to plaintiff's attorney.
This the ___ day of June 2003.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER
LKM/kjd